Karra J. Porter, #5223
   Karra.Porter@chrisjen.com
M. Tanner Clagett, #15823
   Tanner.Clagett@chrisjen.com
CHRISTENSEN & JENSEN, P.C.
257 East 200 South, Suite 1100
Salt Lake City, Utah 84111
Telephone: (801) 323-5000
Facsimile:  (801) 355-3472
*Attorneys for Plaintiff Joseph Ferreri*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JOSEPH E. FERRERI,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF AMERICAN FORK, and SHAWN E. LOTT.<br><br>    Defendants. | **COMPLAINT**<br><br>**AND JURY DEMAND**<br><br>Civil No. 2:23-cv-559<br><br>District Judge |

Plaintiff Joseph Ferreri, by and through undersigned counsel of record, hereby complains against CITY OF AMERICAN FORK and SHAWN E. LOTT as alleged below.

### INTRODUCTION

On February 4, 2021, Joseph Ferreri's life was ruined. On that day, he left work at the Utah State Prison as usual. While driving home to Utah County, he saw flashing lights and pulled over. To Joe's utter shock, he was arrested. Within hours, his name and face were blasted across local media. Joe was part of an international sex trafficking ring, headlines blared.  (There was no such coverage when all charges were later dropped.)

Friends saw him on the news. Strangers who recognized him in the small town where he lived gave him disgusted looks and humiliating distance. He lost his job, and any chance of making it to a 20-year pension. The only job the accused sex trafficker could get was working in a coal mine. Since Joe had also lost his health insurance, he could not get medical treatment for a bad knee (which turned out to be a tumor). He had to hire a lawyer to defend the charges and the government's request that his assets be seized. He and his wife temporarily split up. Joe Ferreri's life was in ruins – and all for nothing. Charges were dropped nine months later.

Joe's "crime"?  He was married to a Chinese woman, and would drop her off and pick her up at her job at a massage business. That was it. Knowing that millions of men do the same thing every day, and wanting a career-boosting arrest, the local officer in charge of the "investigation" embellished, omitted, and made up facts to paint Joe Ferreri as an international sex trafficker. After the arrest, defendant Lott told Joe that if he asked for a lawyer he would be going to jail. In the end, the mass arrest that was supposed to "make [Lott's] bosses very happy" ended up a mass embarrassment – all charges against all defendants dropped.

This action is to enforce Joseph Ferreri's rights under the federal and state constitutions.

**PARTIES**

1. Plaintiff Joseph Ferreri ("Joe" or "Plaintiff") is an individual who, at all times relevant to this complaint, was a resident of the State of Utah, with residences in Salina, Sevier County, Utah, and Lindon, Utah County, Utah.

2. Defendant City of American Fork ("American Fork") is a political subdivision of the State of Utah.

3. Shawn E. Lott ("Lott") is an individual who, at all times relevant to this complaint, was a law enforcement officer employed by American Fork PD. Mr. Lott is sued in his individual capacity. At all times relevant to this complaint, Defendant Lott was acting within the scope of his employment with the City of American Fork.

**JURISDICTION AND VENUE**

4. This action raises questions under the Constitution of the United States and 42 U.S.C. § 1983, and thus this Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. Supplemental jurisdiction of Ferreri's state law claims is appropriate under 28 U.S.C. § 1367.

5. Venue is proper in this Court under 28 U.S.C. §§ 1391(a) and 1391(b)(2), as the events or omissions alleged occurred in Utah County, Utah.

**FACTUAL BACKGROUND**

6. Joseph Ferreri married Juying Wang in Grimes County, Texas, on February 28, 2017.

7. On April 4, 2017, Joe filed a petition with the United States Department of Homeland Security for approval of a relative immigrant Visa, identifying Juying as his spouse. Upon conclusion of its investigation, DHS issued a Visa recognizing Juying as Joe's spouse on May 14, 2018.

8. In June 2020, Joe and Juying moved from Texas to Utah. They first moved to a residence in Salina, Utah, rented by Joe and his brother.

9. In December 2020, Joe was hired as a "control point operator" with the Utah Department of Corrections.

10. This was the second of two periods during which Joe was employed by the Utah Department of Corrections ("UDOC"): the first was from approximately April of 1992 until the autumn of 2004 (in which he primarily worked at the Central Utah Correctional Facility in Gunnison, Utah); and the second, when he was hired at the Utah State Prison (the "Point of the Mountain" prison) in approximately December of 2020 until he was terminated due to his arrest in February of 2021.

11. Joe and Juying moved to an apartment within a house in Lindon, Utah. Other apartment spaces were occupied by students, and by a woman who worked at a local massage business and offered to introduce Juying to her employer. Juying was originally from China, and several employees at the business spoke Chinese. Juying accepted a job there.

12. After Joe and Juying moved to Lindon, Joe's brother continued residing at the Salina residence.

13. Upon Joe's reemployment with UDOC, he and Juying became eligible for health and dental insurance the State of Utah's Public Employee Health Plan. They enrolled as husband and wife with PEHP on December 14, 2020.

4

## PEHP
### Health & Benefits
### PROUDLY SERVING UTAH PUBLIC EMPLOYEES

560 East 200 South » Salt Lake City, UT » 84102-2004 » 801-366-7555 or 800-765-7347 » www.pehp.org

JOSEPH E FERRERI
PO BOX 118
SALINA UT 84654-0118

### CERTIFICATE OF CREDITABLE COVERAGE

IMPORTANT - This certificate provides evidence of your prior health and/or dental coverage. You may need to furnish this certificate if you become eligible under a group health plan that imposes a waiting period for certain medical and/or dental services. If you become covered under another group health plan, check with the plan administrator to see if you need to provide this certificate. You may also need this certificate as proof of a qualifying event to enroll in another group medical and/or dental plan or for Marketplace exchange plans.

### CERTIFICATE

| | |
|---|---|
| Date of Certificate: | 19 FEB 2021 |
| Plan Administrator / Insurer: | Public Employees Health Plan |
| Group Health Plan Name: | PEHP |
| Address: | 560 East 200 South |
| | Salt Lake City, Utah 84102-2004 |
| Telephone: | (801)366-7555 |
| Name of Covered Employee: | FERRERI, JOSEPH E |
| Employee Identification Number: | |

| MEDICAL | Date Waiting Period Began | Effective Date of Continuous Coverage | Termination Date of Continuous Coverage |
|---|---|---|---|
| JOSEPH E FERRERI | ** | 12/14/20 | 02/19/21 |
| JUYING WANG | ** | 12/14/20 | 02/19/21 |

| DENTAL | Date Waiting Period Began | Effective Date of Continuous Coverage | Termination Date of Continuous Coverage |
|---|---|---|---|
| JOSEPH E FERRERI | ** | 12/14/20 | 02/19/21 |
| JUYING WANG | ** | 12/14/20 | 02/19/21 |

** If the waiting period is an issue in your enrollment with your new insurance company please contact us at the above phone number or address.

14. As a State of Utah employee, Joe also became eligible for life insurance through PEHP. He named Juying as his beneficiary.

15. As a State of Utah employee, Joe became eligible for a retirement plan. He named Juying as his beneficiary.

16. Joe and Juying filed joint federal tax returns. (They did not file joint state tax returns because they lived in Texas, which does not have a state income tax.)

17. As of February 4, 2021, Juying was employed at Relax Wood, a licensed massage business in Orem. She occasionally worked at a related business called Sunflower.

18.    At that time, the couple had one vehicle. Joe would often drop Juying off at her work and proceed to his job at the prison, then pick her up after his shift ended.

19.    On a couple of occasions, Juying asked Joe to give a coworker a ride along with them. One of the coworkers was the woman who occupied a different apartment space within the Lindon residence. Joe never gave any of Juying's coworkers a ride when Juying was not present.

20.    On February 4, 2021, Defendant Lott (or someone acting on his behalf) called the Warden's office at the prison.

21.    During this call, Defendant Lott (or his agent) discussed Joe Ferreri. No inquiries were made into Joe's marital status. For example, Lott never asked if Joe had a spouse listed on his benefits or elsewhere in State or Department of Corrections records.

22.    Later that day, Joe's shift ended and he got into his truck to drive back to Utah County. He saw law enforcement lights behind him and pulled over to the side of the road. He was then arrested by an American Fork police officer.

23.    Joe was taken to the American Fork police department.

24.    Joe's name and face were spread across local news outlets. For example, they were shown on KSL News (which included characterizations such as "This is a big one!" "a major prostitution bust," "likely part of a larger human trafficking network"):



and KUTV News:



and Dick Gephardt's website GephardtDaily.com:



25.    Joe was booked on charges of Aiding Prostitution and Pattern of Unlawful Activity.

26.    On February 6, 2021, Joe was formally charged with Aggravated Exploitation of Prostitution, Pattern of Unlawful Activity, Human Trafficking, and Money Laundering, all second degree felonies. *See State of Utah v. Joseph Edward Ferreri*, case number 211400304.

27.    On February 11, 2021, a First Amended Complaint was filed.

28.    Joe hired legal counsel to defend him against the charges.

29.    The strain of the prosecution and Lott's allegations caused a temporary rift in Joe and Juying's marriage, and they split up for a period of months.  They later reconciled.

30.    All charges against Joe and all of the other arrestees were later dropped.

**The Search Warrant Affidavit**

31.    On February 3, 2021 (the day before Joe's arrest), defendant Lott applied for a warrant to search:

a.    the premises of 369 West 120 South, Lindon [Ferreri's residence];
b.    the person of Joseph Ferreri and anyone present at the residence;
c.    Joe's Chevrolet pickup truck;
d.    "Any bag, container, item, safe/lock box which could hold any of the potential items to seize."

32.    The "items to seize" included a broad swath of unspecified material:

Items of evidence for the offense of prostitution, financial transaction devices, financial transaction receipts, any documents which could show how the organization runs, journals, audio/video devices, and storage devices, computers, tablet devices, cell phones, files and documentation related to the business or illegal operations, passports, identifications, any fruits of the crime, money.

33.    Lott requested a warrant authorizing

a full forensic search of any phones owned by members of the organization, including the traffickers and the girls being trafficked. I request the forensic search include, but not limited to phone calls, phone call logs, audio/video recordings, Text messages, emails, other forms of communication, all installed applications and any associated recordings and communications. All electronic files, photos, images, both sent and received, related to the acquisition, storage, concealment, sharing digital files, in addition I request authorization to acquire usernames, passwords, access codes and encryption and that said property or evidence. Any information identifying the historical location of this cell phone including GPS information, Cell tower information, image exif data, wifi history or other information relating to the historical location of this cell phone.

34.    Lott represented to the court that the above property or evidence

Was unlawfully acquired or is unlawfully possessed;
Has been used or is possessed for the purpose of being used to commit or conceal the commission of an offense;
or is evidence of illegal conduct.

35.    In his Affidavit for Search Warrant, defendant Lott made the following representations regarding his experience:

9

Your Affiant Detective Shawn Elton Lott has been a Police Officer for 6 years, and am currently assigned as a Detective with Major Crimes Task Force working on the SET team of the American Fork Police Department/Utah County. Your Affiant graduated from Salt Lake Community College Police Academy in April of 2014. I have experience investigating property crimes, crimes against people, financial crimes, traffic offenses, harassment details, and accidents Your Affiant has been through multiple Field Sobriety courses, and courses to detect when persons are under the influence of alcohol or drugs; including A-ride, and the DRE (drug recognition expert) courses, and is a certified DRE. Your Affiant has made multiple DUI arrests, and multiple drug related arrests. Your affiant has performed wiretap investigations and understands the inner workings of drug trafficking organizations, and drug sales.

36.     In his Affidavit for Search Warrant, paragraphs 3-5, defendant Lott made the following representations regarding "Asian massage parlors", none of which were particularized to the business(es) at issue:

3 Most, if not all, Asian massage businesses operate the same. In my training and experience I have learned how these criminal organizations are operating with minimal risk to the business owner. An Asian massage parlor, herein referred to as an AMP, typically sets up operation in small strip mall areas throughout the United States. Most AMP's advertise their businesses visually by placing neon signs, window coverings with images of Asian Zen type photos, or lastly simply stating "Asian massage." The business typically applies for a business license with the local government entity within the city it is located. The names listed as owners on the applications are often difficult to understand, as Chinese names start with the last name first. This usually disassociated them from any type of driver's license database since the United States typically lists first name first, and last name last. Many applications have ownership names using out of state driver's licenses and addresses, typically tied to the southern California area.

4 Once the business is granted a business license, mostly because the city entity has no legal basis to deny licensure, they are able to open the store front. Most of the AMP businesses apply for a business license several times per year, only changing slightly the name variation of the business, and changing the owner's name and information. The store front itself never changes the signage, nor does it operate utilizing the new name change. This tactic is commonly used by the Asian criminal organizations to thwart law enforcement from criminal investigations.

5 These Asian females fall into a world of human trafficking and become victims in their own right. In the Asian culture, family honor is among the highest level of priority to these Asian female victims. The criminal organizations often threaten to contact their families and provide them with information of voluntary prostitution occurring in the United States, which is unwanted by the female victims. These Asian female victims fall deeper into the human trafficking organization living with the fear of what may happen if they deviate from the criminal organizations wishes. Some of the Asian females are forced to live in small closets or rooms within the massage business premise and given only minimal means for survival. If the Asian female victims are not living on the store premise, they often live with several other Asian women who are also victims of the human trafficking organization in apartment buildings or homes owned or rented by members of the criminal organization.

37.    In his Affidavit for Search Warrant, ¶¶ 15-16, defendant Lott stated:

15 On December 14, 2020, a concerned citizen observed an older white male in a Chevrolet Truck bearing Texas license plate DWF1249 pick up a Chinese girl from the Sunflower Massage parlor. The truck then drove to a residence located at 369 West 120 North, Lindon, Utah. Detectives have observed this truck on multiple occasions at the residence at 369 West 120 North, Lindon and it appears to be where the driver stays. The vehicle is registered to a Joseph Edward Ferreri. Detectives have observed this vehicle stop at Relax Wood LLC on multiple occasions.

16 Through my training and experience it is not uncommon for trafficked girls to be dropped off and picked up by someone other than the business owner. This is done in an attempt to thwart law enforcement investigations and keep other members of the organization "clean".

38.    The "Chinese girl" referred to by defendant Lott was Joe's wife Juying. Juying's date of birth is ******, 1964; she was 46 years old at the time. Indeed, she was two years older than Joe (date of birth ******, 1966).

39.    Defendant Lott's representation that Juying was a "Chinese girl" falsely implied that Juying was a minor at the time the Affidavit was written—especially in the context of the sentence "a concerned citizen observed an older white male in a Chevrolet Truck… pick up a Chinese girl."

40.    Defendant Lott repeatedly referenced "girls" in filings with the Fourth District Court. None of the employees at the massage business(es) were minors.

41.    In the Return to Search Warrant filed with the Fourth District Court, defendant Lott stated that he had seized "Sunflower paperwork, checks for Relaxed wood, ID's, papers, electronics, [and] cellphones" from the Ferrari residence.  (The search warrant appeared to encompass the entire house, not just the downstairs area occupied by Joe and Juying.)

42.    The Return to Search Warrant appears to be worded in a manner intended to mislead the court. For example, "Sunflower paperwork," "papers," "electronics" and "cellphones" imply something inculpatory. "ID's" implies that identification documents were found for people other than the residents of the house.

**Joe Requests a Lawyer**

43.    At approximately 3:02 p.m. on February 4, 2021, while Joe was being held in the American Fork police station, defendant Lott approached to "chat" with him.

44.    This interaction was captured via bodycam video. The view in the video is obstructed, but the audio is relatively clear.

45.    Defendant Lott began by reciting Joe's *Miranda* rights, including Joe's right to an attorney.

46.    During the interview, Joe stated, "I will cooperate 100 percent, if I can get a lawyer."

47.    Defendant Lott responded by saying, "And I can respect that. Full disclosure, if you're being straight with me then I have no intention of taking you to jail today. But, if you're requesting a lawyer be present for you, I'm not going to have a lawyer while we're talking. Full disclosure. But also understand if I don't think you're being straight with me, then could you go to jail today? Yes. I do have sufficient evidence to book you into jail."

48.     Shortly thereafter, defendant Lott said, "You're okay talking to me, just us, right? Joe responded, "Yes, sir." Defendant Lott then said, "Okay, I just wanted to clarify that. Anytime, someone mentions a lawyer, I don't want to force them into something." Joe then stated, "I think I—, I just—[sigh]." At that moment the video and audio cuts off without explanation.

49.     At approximately 6:34 p.m. on February 4, 2021, defendant Lott again visited Joe to "chat."

50.     Defendant Lott began the discussion with Joe by stating: "I just want to go over a couple things with you. So it sounds like they talked to you—I don't know exactly how all that went—but it sounds like you wanted a lawyer. Correct?" Joe responded, "Yes."

51.     The conversation then deviated to a discussion about Joe consenting to have police relocate Joe's vehicle so that it would not be impounded.

52.     Defendant Lott then cut off further conversation and stated that he was "not asking any questions" due to Joe's request for a lawyer. However, Defendant Lott proceeded to elicit statements from Joe as defendant Lott continued to explain "where [he was] at" regarding the case.

53.     At approximately 11:45 p.m. on February 4, 2021, Joe was escorted from the police station to jail in the back of a police cruiser. (This is the time reflected on the body cam of the officer who transported Joe. The booking sheet states that Joe was booked at 10:33 p.m.)

54.     During the ride to the jail, the transporting officer's body cam was active and, while not providing clear visuals of anything, it did capture the audio of that drive. The first time Joe spoke in the police cruiser, he asked the arresting officer, "Do you have any idea how long it will take to see an attorney?"

55.     While at the American Fork police department and Utah County jail, Joe was not provided an opportunity to contact an attorney.

## The Probable Cause Affidavit

56.     No arrest warrant for Joe Ferreri had been issued at the time of his arrest.

57.     After the arrest, defendant Lott prepared a sworn Affidavit of Probable Cause. Lott submitted the Affidavit of Probable Cause to the Fourth District Court.

58.     The purpose of the Affidavit of Probable Cause was to demonstrate that probable cause existed for the warrantless arrest of Joe. Without the submission of this Affidavit of Probable Cause, the arrest would have been invalidated.

59.     In the Affidavit of Probable cause, defendant Lott made several inaccurate assertions about Joe, as well as his investigation as a whole.

60.     Defendant Lott reiterated similar broad and stereotypical generalizations regarding "Asian culture" and "most, if not all, Asian massage businesses" as in his Affidavit for Search Warrant, including:

Most, if not all, Asian massage businesses operate the same. In my training and experience I have learned how these criminal organizations are operating with minimal risk to the business owner. An Asian massage parlor, herein referred to as an AMP, typically sets up operation in small strip mall areas throughout the United States. Most AMP's advertise their businesses visually by placing neon signs, window coverings with images of Asian Zen type photos, or lastly simply stating "Asian massage." The business typically applies for a business license with the local government entity within the city it is located. The names listed as owners on the applications are often difficult to understand, as Chinese names start with the last name first. This usually disassociated them from any type of driver's license database since the United States typically lists first name first, and last name last. Many applications have ownership names using out of state driver's licenses and addresses, typically tied to the southern California area.

Once the business is granted a business license, mostly because the city entity has no legal basis to deny licensure, they are able to open the store front. Most of the AMP businesses apply for a business license several times per year, only changing slightly the name variation of the business, and changing the owner's name and information. The store front itself never changes the signage, nor does it operate utilizing the new name change. This tactic is commonly used by the Asian criminal organizations to thwart law enforcement from criminal investigations.

These Asian females fall into a world of human trafficking and become victims in their own right. In the Asian culture, family honor is among the highest level of priority to these Asian female victims. The criminal organizations often threaten to contact their families and provide them with information of voluntary prostitution occurring in the United States, which is unwanted by the female victims. These Asian female victims fall deeper into the human trafficking organization living with the fear of what may happen if they deviate from the criminal organizations wishes. Some of the Asian females are forced to live in small closets or rooms within the massage business premise and given only minimal means for survival. If the Asian female victims are not living on the store premise, they often live with several other Asian women who are also victims of the human trafficking organization in apartment buildings or homes owned or rented by members of the criminal organization.

61.     Defendant Lott's differential treatment of, and/or targeting of, "Asian" or "Chinese" subjects, permeates the Affidavit of Probable Cause. In one example, defendant Lott complained in his Affidavit of Probable Cause that "the names listed as owners on the applications are often difficult to understand, as Chinese names start with the last name first. This usually disassociated them from any type of driver's license database since the United States typically lists first name first, and last name last." In another example, Lott stated that, with respect to "Asian Massage Parlors," "[m]any applications have ownership names using out of state driver's licenses and addresses, typically tied to the southern California area." Lott omitted the fact that no license at issue here had any ties to the southern California area.

62.     Defendant Lott made unsupported claims regarding his training as it related to human trafficking:

Through my training, experience and conversations with other officers who specialize in this field, I have found that rarely if ever are the Asian females involved in being trafficked allowed to leave the business. This is done to control the female individuals and keep them involved in trafficking.

…

15

Through my training and experience I have found that most organizations will have some sort of headquarters which holds money, transaction books, files, passports, identifications, and other valuable items.

63.    Defendant Lott made inaccurate statements regarding Joe's characterizations of his marriage and prejudiced statements regarding the marriage itself:

Ferreri informed detectives that his wife works at multiple massage parlors. Ferreri informed detectives that he met his wife at a massage parlor where she provided him a sexual act in return for money, this was also confirmed through Ferreri's wife. Ferreri does not speak Chinese and his wife only speaks Chinese. Ferreri admitted that since they have been married, they have spent years apart. Ferreri's wife is not yet a citizen and she is dependent on him to gain citizenship status. Based off the totality of the circumstances it appears the marriage may not be legitimate.

64.    At the time that defendant Lott made this statement regarding the legitimacy of Joe's marriage, he had disregarded multiple means of verifying Joe's marriage. As noted above, the State of Utah reflected Juying as Joe's spouse in multiple contexts. Joe had informed defendant Lott of the year (2017) and state (Texas) of his marriage to Juying.  A short telephone call to a vital records office in Texas would have confirmed the marriage. Indeed, a 2-minute search on a common commercial site such as Ancestry.com would have confirmed the marriage:



65. Other resources readily available to defendant Lott (*e.g.,* TLO) would have revealed years of common residence of Joe and Juying since 2017. Defendant Lott did not check any of these resources.

66. Defendant Lott made false and unsubstantiated representations about Joe's role in alleged criminal activity by Juying:

Without Ferreri transporting his wife to the various massage parlors she would not have been able to engage in criminal activity.

67. On the last line of his Probable Cause Affidavit, defendant Lott stated:

Joseph has been known to travel for days at a time to Selina Utah.

68. Lott omitted the fact that Joe had previously informed detectives that he rented a premises in Salina, Utah, with his brother, and that he often spent weekends there. Lott omitted the fact (which he either knew and ignored or did nothing to investigate) that Joe's registered address with the Department of Corrections was the Salina address. Joe's driver's license still had the Salina address. Even the Information later filed against Joe listed his home address as Salina. It is a reasonable inference that defendant Lott omitted all of this information to make Joe's occasional travel to Salina seem suspicious.

69. Near the bottom of page 2 of the Probable Cause Affidavit, defendant Lott made this representation:

Joseph lied multiple times to officers during the interview and would not cooperate despite having a search warrant.

70. This representation was false.

71. Joe stated to defendant Lott multiple times that he would cooperate with the investigation. While being interviewed by Defendant Lott, Joe stated: "I will cooperate 100%, if I

17

can get a lawyer." Joe had been advised by Lott that he had a right to an attorney; it was misleading for Lott to characterize the exercise of that right as refusing to cooperate.

72.     Lott omitted the fact that Joe was at work and not present when the search warrant was executed at his residence. There was no instance of Joe failing to cooperate "despite having a search warrant." Joe mentioned that a review of his cell phone that had been seized would show his innocence.

73.     Defendant Lott did not identify a single instance of Joe lying to law enforcement officers. Joe had not lied to Lott or any law enforcement officer.

74.     Due to defendant Lott's misrepresentations and omissions regarding Joe's marriage to Juying, as a condition of being released from jail, the court barred contact between Joe and his wife. The court's order stated, "For contact with wife to continue, Defendant must produce a valid marriage license at first appearance as proof of legitimate marriage."

**Procedural history of the criminal charges**

75.     At the time of his arrest, Joe's cell phone was seized.

76.     During their "chats" on February 4, 2021, Joe told defendant Lott that reviewing the cell phone would show that he was not engaged in any criminal activities.

77.     On February 11, 2021, a First Amended Information was filed. The factual support for this First Amended Information was provided by defendant Lott. (See 1st Amended Information, p. 24.)

78.     Among other factual representations, the First Amended Information reiterated the false characterization of Juying as a Chinese "girl."  An unnumbered paragraph on page 15 stated: "On December 14, 2020, a concerned citizen observed an older white male in a Chevrolet Truck

pick up a Chinese girl from the Sunflower Massage parlor. The truck then drove to a residence in Lindon, Utah. Detectives have observed this same vehicle take a Chinese girl from the residence in Lindon, to the Sunflower Massage parlor on several occasions. The same vehicle has also been seen by detectives transporting a Chinese girl to Relax Wood LLC on multiple occasions."

79.     In each of these instances, the so-called "Chinese girl" was Juying. Defendant Lott omitted the material fact that Juying was 46 years old. Defendant Lott also omitted that it was the same woman each time, falsely implying that Joe was transporting multiple "girls" to the residence in Lindon.

80.     The First Amended Information requested that Joe and the other defendants "forfeit" nearly $1 million in money and property. The Information specifically asked that the Lindon house rented by Joe be "forfeited" to the government, estimatating that it was "valued over $500,000."

81.     On April 1, 2021, Joe's lawyer submitted a request to see the forensic download of Joe's cell phone. (Defendant Lott's February 3, 2021, application for search warrant had expressly requested permission to conduct a "full forensic search of any phones," including Joe's phone, and Joe had told Lott that an examination of the phone would exonerate him.)

82.     Joe's lawyer was never given the forensic download from Joe's cell phone, despite being ordered by the Fourth District Court to provide the download no later than August 4, 2021.

83.     On October 27, 2021, the Fourth District Court scheduled a preliminary hearing in Joe's case for December 9, 2021.

19

84.     At the preliminary hearing, prosecutors would have been required to adduce evidence establishing probable cause to believe that a crime had been committed, and that it had been committed by Joe.

85.     On December 8, 2021, the day before the scheduled preliminary hearing, all charges against Joe Ferreri were dropped.

86.     On January 26, 2022, all charges against all of the other arrestees were dropped.

87.     After the dismissal of the charges against him, Joe asked for his cell phone back. Upon information and belief, the City of American Fork still has possession of the cell phone.

88.     Upon information and belief, defendant Lott's actions were consistent with his training by the City of American Fork. Facts supporting this allegation include Lott's express reference to his training in his Fourth District Court filings.

89.     Upon information and belief, defendant Lott's actions were consistent with the policies of the City of American Fork. Facts supporting this allegation include that Lott was not disciplined for his actions, even after all charges against all arrestees were dropped, and that none of the other American Fork officers intervened despite patently unconstitutional actions and targeting of the Asian/Chinese subjects.

**Joe is fired and devastated**

90.     As a result of the arrest and criminal charges, Joe was fired from his job at the Utah State Prison on February 19, 2021.

91.     Based on his prior stint with the Utah Department of Corrections, Joe had accrued approximately 13 years toward a 20-year pension. At the time of his arrest, Joe had not been subject to discipline or any other indication of dissatisfaction with his job performance.

92. Within hours of his arrest, Joe's name and face appeared on multiple media outlets, accused of being part of an international sex trafficking ring.

93. After his termination and highly publicized accusations of being an international sex trafficker, the only job that Joe could get was at a coal mine through a temp agency. Joe's coworkers taunted him regarding the criminal allegations, calling him "Shawshank" and making statements clearly indicating that they believed he must be guilty.

94. Friends of Joe's saw him on the news; he was ostracized in the small town where he lived.

95. As a result of his termination, Joe lost his health insurance and could not afford treatment for his bad knee. When he temporarily regained insurance in approximately August of 2022, Joe learned that his "bad knee" was actually a tumor running from his thigh to the middle of his calf. Joe also discovered around this time that he had developed diabetes.

96. Joe has tried three times (all in 2022 after the charges were dropped) to be rehired by the Department of Corrections but has been rejected, despite widely reported staffing shortages at the prison.

97. In April 2023, while living without insurance, Joe suffered a heart attack, incurring substantial medical bills.

98. As a result of the wrongful search, arrest, and criminal charges, Joe incurred economic damages including attorney fees to defend himself from the charges, lost wages and benefits following his termination, uncovered medical expenses, the loss of his cell phone and other material seized and never returned, and other damages as disclosed under the Rules of Civil Procedure. Joe also incurred noneconomic damages such as humiliation, stress, untreated medical

21

conditions, and other noneconomic damages as disclosed hereafter under the Rules of Civil Procedure. As a result of the defendants' wrongful actions, Joe was also required to retain the services of an experienced civil rights attorney to vindicate his constitutional rights.

**FIRST CLAIM FOR RELIEF**

*(Fourth Amendment and Utah Constitution Art. I, § 14)*

99.    Plaintiff incorporates all other paragraphs of this Complaint as if fully set forth herein.

100.    At all times relevant hereto, Joe had a right to be free of unreasonable stops, searches, seizures, and detentions under the Fourth Amendment to the U.S. Constitution, and Article I, § 14 of the Utah Constitution.

101.    Joe's rights under these provisions included a right not to be searched, arrested, and criminally charged due to material misrepresentations, omissions, and misleading statements by defendant Lott.

102.    At all times relevant hereto, and in performance of the acts set forth herein, defendant Lott acted under color of state law.

103.    At all times relevant hereto, and in performance of the acts set forth herein, defendant Lott actively and personally caused the violations of constitutional rights alleged herein.

104.    As described above, defendant Lott made material misrepresentations, omissions, and misleading statements, such as creating the false impression that he had training and experience in sex trafficking cases, falsely stating that Joe had lied and been uncooperative in interviews, misrepresenting that Joe had transported multiple minor females to and from his residence, falsely stating that Joe's marriage was likely fabricated despite an abundance of readily

available evidence to the contrary, making bald generalizations and complaints about Asian/Chinese-own massage businesses, including statements known to be irrelevant to the businesses at issue, etc.

105.    Defendant Lott's actions as alleged herein manifested malicious, reckless, and callous indifference to Joe's established constitutional rights of which reasonable police officers are or should be aware.

106.    Defendant Lott's actions as alleged herein were the proximate cause of the damages sustained by Joe.

**SECOND CLAIM FOR RELIEF**

*(Sixth Amendment and Utah Constitution Art. I, § 12)*

107.    Plaintiff incorporates all other paragraphs of this Complaint as if fully set forth herein.

108.    At all times relevant hereto, Joe had a right to the assistance of counsel under the Sixth Amendment of the U.S. Constitution and Article I, § 12 of the Utah Constitution. Joe had a corresponding right not to be penalized for requesting an attorney.

109.    At all times relevant hereto, and in performance of the acts set forth herein, defendant Lott acted under color of state law.

110.    At all times relevant hereto, and in performance of the acts set forth herein, defendant Lott actively and personally caused the violations of constitutional rights alleged herein.

111.    Defendant Lott denied Joe an opportunity to contact counsel, and continued questioning Joe after he requested counsel.  Lott penalizing Joe for requesting counsel by stating that, if Joe requested an attorney he would be going to, and following through on that threat. Lott

23

retaliated against Joe for requesting an attorney by falsely stating that Joe had refused to cooperate, while omitting that all Joe had done was request an attorney.

112. The unlawful misconduct of Defendant was objectively unreasonable and undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

113. Defendant Lott's actions violated Plaintiff's clearly established constitutional rights of which reasonable police officers are or should be aware.

114. Plaintiff is entitled to attorney fees and expenses pursuant to 42 U.S.C. § 1988, pre-judgment interest, and costs as allowable by federal law.

### THIRD CLAIM FOR RELIEF

*(Fourteenth Amendment and Utah Constitution Art. I, § 2)*

115. Plaintiff incorporates all other paragraphs of this Complaint as if fully set forth herein.

116. At all times relevant hereto, Joe was entitled to the equal protection and benefit of the law under the Fourteenth Amendment as well as Utah Constitution Article I, § 2.

117. At all times relevant hereto, and in performance of the acts set forth herein, defendant Lott acted under color of state law.

118. Defendant Lott targeted Joe based solely on Joe's association with a Chinese woman who worked at a licensed massage business, despite an utter lack of any evidence of criminal conduct by Joe. To the contrary, Joe's observed conduct was no different from other spouses who share one car. The sole basis for targeting Joe was the race/ethnicity of his wife and her occupation. Lott further targeted Joe based on unsupported stereotypes and complaints about

"Asian massage parlors" in general, with no reference to the particular businesses at issue. Lott violated Joe's rights under the Fourteenth Amendment as well as Utah Constitution Article I, § 2.

119.    The unlawful misconduct of defendant Lott was objectively unreasonable and undertaken intentionally with willful indifference to Joe's constitutional rights.

120.    Defendant Lott's actions violated Plaintiff's clearly established constitutional rights of which reasonable police officers are or should be aware.

121.    Plaintiff is entitled to attorney fees and expenses pursuant to 42 U.S.C. § 1988, pre-judgment interest, and costs as allowable by federal law.

## FOURTH CLAIM FOR RELIEF

*(First Amendment and Utah Constitution Art. I, § I)*

122.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

123.    At all times relevant hereto, Joe was entitled to the free exercise of his speech and the free communication of his thoughts and opinions.

124.    At all times relevant hereto, and in performance of the acts set forth herein, defendant Lott acted under color of state law.

125.    Defendant Lott's actions as alleged herein—punishing Joe by jailing him due to his request for counsel, and mischaracterizing his request for counsel as a refusal to cooperate—violated Joe's rights under the First Amendment and under Article I, Section I of the Utah Constitution.

126.    The unlawful misconduct of defendant Lott was objectively unreasonable and undertaken intentionally with willful indifference to Joe's constitutional rights.

25

127.    Defendant Lott's actions violated Plaintiff's clearly established constitutional rights of which reasonable police officers are or should be aware.

128.    Plaintiff is entitled to attorney fees and expenses pursuant to 42 U.S.C. § 1988, pre-judgment interest, and costs as allowable by federal law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the entry of a judgment in his favor and against Defendants as follows:

1. A declaratory judgment pursuant to 28 U.S.C. § 2201, declaring that Defendants' actions violated Plaintiff's rights under the Fourth Amendment to the U.S. Constitution as well as Article I, §14 of the Utah Constitution.

2. A declaratory judgment pursuant to 28 U.S.C. § 2201, declaring that Defendants' actions violated Plaintiff's rights under the Sixth Amendment to the U.S. Constitution as well as Article I, §12 of the Utah Constitution.

3. A declaratory judgment pursuant to 28 U.S.C. § 2201, declaring that Defendants' actions violated Plaintiff's rights under the Fourteenth Amendment to the U.S. Constitution as well as Article I, §2 of the Utah Constitution.

4. A judgment awarding Plaintiff interest on economic losses to the extent permitted by law.

5. A judgment awarding compensation to Plaintiff for his noneconomic loss, emotional distress and other personal injury resulting from the violation of his Constitutional rights.

26

6. A judgment awarding Plaintiff his costs of suit, including reasonable attorney fees and litigation expenses, under 42 U.S.C. § 1988.

7. A judgment awarding such other and further relief, including equitable, declaratory, and injunctive relief, to which Plaintiff may be entitled.

DATED this 24th day of August, 2023.

CHRISTENSEN & JENSEN, P.C.

/s/ Karra J. Porter
Karra J. Porter
M. Tanner Clagett
Attorneys for Joseph Ferreri

JURY TRIAL DEMANDED